IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RHONDA D. CONWAY                                                          PLAINTIFF

v.                              Civil No. 07-5220

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                           DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Rhonda Conway, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying her claim for a period of disability, disability insurance benefits ("DIB"), supplemental

security income ("SSI") under Titles II and VI of the Social Security Act (hereinafter "the Act"),

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on March 10, 2005, alleging an

amended onset date of January 6, 2005[1], due to complications from Human Immunodeficiency

Virus ("HIV"), Hepatitis C, decreased hearing in her right ear, borderline intelligence, and

adjustment disorder with depression.  (Tr. 16).  Her applications were initially denied and that

denial was upheld upon reconsideration.  An administrative hearing was held on October 17,

2006.  (Tr. 332-351).  Plaintiff was present and represented by counsel.

---

[1]Plaintiff had filed a previous application for benefits in 2003 that was denied at the
hearing level on January 5, 2005.  (Tr. 13).  This decision was appealed to both the Appeals
Council and later tot his Court.   Therefore, plaintiff's earliest possible onset date is January
6, 2005.

At this time, plaintiff was 50 years of age and possessed a ninth grade education. (Tr. 10-21, 339). She had past relevant work ("PRW") as a machine operator, pizza delivery worker, and sheet metal assembler. (Tr. 84-94, 340-342).

On August 1, 2007, the Administrative Law Judge ("ALJ") concluded that plaintiff's HIV, hepatitis C, partial hearing loss, and depression were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 16-17). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work except that she could only occasionally stoop and crouch. He found that plaintiff could sit, stand, and walk for 6 hours out of an 8-hour workday, could not perform tasks requiring precise hearing, and was restricted to tasks involving simple instruction and limited interaction with co-workers and the public. Specifically, he indicated that plaintiff could perform work where the interpersonal contact required is only incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables, little judgment is required, and the supervision required is simple, direct, and concrete. (Tr. 18). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform her PRW as a machine operator, pizza delivery worker, and sheet metal assembler. (Tr. 20).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on September 26, 2007. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

2

II.     **Evidence Presented:**

On February 18, 2000, Plaintiff tested positive for the HIV antibody. (Tr. 108).

In August 2000, plaintiff was diagnosed with hepatitis C. (Tr. 165-166). Records also indicate that plaintiff sought treatment for headaches and total hearing loss in her right ear. (Tr. 168-171). In 2003, Dr. Michael Reese indicated that plaintiff had also experienced a gradual deterioration of hearing in her left ear. (Tr. 172-179). Plaintiff had an 88 percent discrimination in the left ear. He prescribed a hearing aid trial to see if it would help plaintiff understand people better. (Tr. 172).

In 2004, plaintiff sought treatment for depression and anxiety. (Tr. 211-212). She was prescribed Xanax and Amitriptyline. (Tr. 211-212).

On July 9, 2004, at the request of the Commissioner, Plaintiff underwent a psychological evaluation performed by Dr. Scott McCarty. (Tr. 180-184). The Wechsler Adult Intelligence Scale, Third Edition, revealed Plaintiff was functioning in the borderline range of intelligence. (Tr. 181). Her verbal IQ was 79, performance IQ was 84, and her full scale IQ was 70. (Tr. 181).

On March 12, 2005, plaintiff was treated for depression and anxiety and complaints of carpal tunnel syndrome. (Tr. 210). Dr. William Webb prescribed Xanax. (Tr. 210).

On May 10, 2005, plaintiff underwent a mental status evaluation and evaluation of adaptive functioning with Dr. Scott McCarty. (Tr. 229-232). Plaintiff indicated that she was HIV and Hepatitis C positive, completely deaf in her right ear, experiencing hearing limitations in her left ear, fatigued, and depressed. She reported her medications as Xanax and Hydrocodone. She had a history of alcohol and illicit drug abuse to include an arrest and

AO72A
(Rev. 8/82)

incarceration for calling in her own prescription for Hydrocodone in 1996.  However, she reported no current problems with drugs or alcohol.  Dr. McCarty diagnosed plaintiff with adjustment disorder with mixed anxiety and depressed mood and assessed her with a global assessment of functioning ("GAF") score of 53.  Plaintiff was noted to have an impaired ability to relate to others due to increased withdrawal and isolation over the previous 2 years.  She was also easily agitated.  However, there was no evidence of withdrawal.  Plaintiff stated that she could drive and make change, but required her daughter's help shopping and performing household chores due to significant fatigue.  Dr. McCarty noted that she did exhibit hearing difficulty, but had good concentration, persistence, and pace.  (Tr. 232).

On July 28, 2005, plaintiff underwent a diagnostic interview at Ozark Guidance Center.  (Tr. 290-293).  She reported staying alone as much as possible, difficulty sleeping, problems eating, difficulty doing things she previously enjoyed, feeling irritable, crying, difficulty getting out of bed, and occasional suicidal thoughts.  Although her doctors told her that her physical illnesses were not the cause of her depression, plaintiff stated that she had not been able to "pull out of it" since she found out that she was sick.  Lori Stukey, a counselor, diagnosed plaintiff with major depressive disorder and assessed her with a GAF of 50.  She indicated that individual sessions were needed in order to address coping skills and underlying emotional distress that was continuing to prevent plaintiff from doing the things she wanted to do.  (Tr. 293).

On September 29, 2005, plaintiff continued to exhibit a depressed mood.  (Tr. 300-301).  Her depression was rated as a 2 on a scale of 1 to 7.  Her progress was noted to be limited.  (Tr. 300-301).

4

On October 14, 2005, plaintiff's mood was depressed, she exhibited excessive anger, and continued to experience relational difficulty. (Tr. 298-299).  Plaintiff had written a letter to her self regarding her anger, noting that she took her anger out on her family and regretted her actions.  She was also mourning what she perceived to be a shortened life, lack of future relationships, and inability to see her granddaughter grow up due to her illness. (Tr. 298).

On November 18, 2005, plaintiff's mood was depressed, she exhibited excessive anger, she had relational difficulty, and she was experiencing social difficulty.  (Tr. 296-297).  Her recent HIV testing had yielded good results, but her Hepatitis was causing fatigue and possible headaches.  She also reported shame due to her illness.  (Tr. 296).

On December 2, 2005, plaintiff was diagnosed with severe deafness, arthritis, and an enlarged liver.  (Tr. 312).

On December 5, 2005, plaintiff's HIV remained asymptomatic and her lab tests were unremarkable.  (Tr. 305-306).  However, she reported fatigue and was noted to have an enlarged liver.  Plaintiff was doing her best not to think of the worst possible scenario concerning her liver, but broke down at times.  She continued to experience problems with anxiety, stating that it felt like she was "crawlin' outa [her] skin."  Her mood was said to be depressed and evidence of excessive anxiety, social difficulty, grief or loss difficulty, and poor self-esteem were also noted.  (Tr. 305).

On December 10, 2005, plaintiff was diagnosed with depression and headache for which she had been prescribed Amitriptyline, Xanax, and Hydrocodone.  (Tr. 309).  The doctor noted that her recent tests had been normal for HIV, but indicated an enlarged liver.  The liver had apparently enlarged in size over the previous 4 years.  The doctor recommended a total work-up,

5

to include a CT scan of plaintiff's abdomen, but she refused.  Instead, she chose to followup in 6 months.  (Tr. 309).

On January 20, 2006, plaintiff reported that her symptoms of depression had begun when she was diagnosed with HIV and Hepatitis C in 2000.  (Tr. 316-319).  She had not been able to "pull out" of it since her diagnoses.  Plaintiff stated that she often ate only one time per day and did not feel like eating about 2 to 3 days per week.  She experienced difficulty sleeping, reported low energy and irritability, and stated that she often cried.  Her eye contact was good, her speech was normal, no psychomotor agitation or retardation was noted, her IQ was said to be average, and there was no evidence of hallucinations.  However, she did occasionally see a bug in the corner of her eye that was not actually there.  Dr. Ester Salvador diagnosed plaintiff with major depressive disorder and assessed her with a GAF of 50-55.  Dr. Salvador prescribed Lexapro and continued therapy to help her with coping and social skills in her adjustment to her illness.  (Tr. 316-319).

## III.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

AO72A
(Rev. 8/82)

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.    The Evaluation Process:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

7

1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## IV.     **Discussion**:

We first turn to the ALJ's evaluation of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  As the United States Court of Appeals for the Eighth Circuit  recently observed, "Our touchstone is that

8

[a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that Plaintiff had been diagnosed with both HIV and Hepatitis C since 2000. However, neither condition was being actively treated with medication. Records indicate that her HIV test results remained "good" throughout the relevant time period. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Although recent exams indicate that she did have an enlarged liver, plaintiff had refused to undergo a liver biopsy or CT scan. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (holding that "[a] failure to follow a recommended course of treatment . . . weighs against a claimant's credibility." (citation omitted)). Therefore, her medical treatment consisted primarily of follow-up blood tests, monitoring, and counseling. The record contains nothing in the way of physical limitations imposed by doctors, or even self imposed limitations reported to her doctors.

While she reported suffering fatigue and body aches which she associated with the HIV and Hepatitis C, we note that Plaintiff reported being able to engage in some household activities and care for her three-year old granddaughter. In 2004, Plaintiff's treating physician was of the opinion only that Plaintiff could not engage in a physically taxing job because of her fatigue.

AO72A
(Rev. 8/82)

(Tr. 191-192). While there was medical evidence supporting the existence of some fatigue, there is little in the way of medical evidence supporting the extent of the pain and physical limitation alleged to exist by Plaintiff.

Plaintiff was also deaf in her right ear and had hearing limitations in her left ear. The ALJ properly considered this and concluded that plaintiff would not be able to perform work requiring perfect hearing. In spite of her limitations, however, we note that plaintiff did not have significant difficulties hearing the ALJ or her representative at the administrative hearing. *See Lacroix v. Barnhart*,, 465 F.3d 881, 889 (8th Cir. 2006) (holding that fact that plaintiff used hearing aides, read lips, and did not experience difficulty hearing or understanding the ALJ weighed against her claim for disability).

The ALJ also properly considered Plaintiff's infrequent treatment for her various impairments. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Although Plaintiff testified she did not have insurance and her finances were poor, there is no indication she consistently sought to obtain low-cost or free care. At the hearing, plaintiff admitted that she was aware that such services existed and that she had obtained them through the Pauper House Clinic. (Tr. 346). This evidences plaintiff's knowledge of these services, but it does not excuse her failure to pursue consistent treatment for her HIV and Hepatitis C.

Although plaintiff contends that the ALJ did not properly consider her major depression, the record clearly indicates that he did. (Tr. 16-17). We note, however, that the record supports

10

no more than a finding of a moderate limitation imposed by plaintiff's mental impairment that was clearly factored into the ALJ's RFC assessment.  As such, we do not find error.

We next turn to the ALJ's determination that Plaintiff had the RFC to engage in a range of light work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record.  *Id.*  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, the plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians.  On April 21, 2005, Dr Alice Davidson completed a physical RFC assessment.  (Tr. 218-228).  After reviewing plaintiff's medical records, she concluded that plaintiff could lift 25 pounds frequently and 50 pounds occasionally, as well as sit, stand, and walk for 6 hours during an 8-hour workday.  Dr. Davidson also opined that plaintiff could occasionally stoop and crouch and could not perform jobs requiring excellent hearing. (Tr. 220).

On May 17, 2005, Dr. Dan Donahue completed a mental RFC assessment and a

11

Psychiatric Review Technique Form ("PRTF"). (Tr. 233-236, 240-253). He reviewed plaintiff's medical records and determined that she would have moderate limitations in the following areas: understanding, remembering, and carrying our detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and, interacting appropriately with the general public. No significant limitations were noted in all remaining categories. Dr. Donahue stated that plaintiff was able to perform work where the interpersonal contact is incidental to the work perform, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple. (Tr. 235).

On June 30, 2005, Dr. Gale Kay also prepared a mental RFC and PRTF. (Tr. 254-274). She concluded that plaintiff had moderate limitations with regard to carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, accepting instructions, responding appropriately to criticism from supervisors, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. (Tr. 255).

On August 11, 2005, Dr. Kimberly Adametz completed a physical RFC assessment. (Tr. 276-283). After reviewing plaintiff's medical records, she concluded that plaintiff could lift 25 pounds frequently, 50 pounds occasionally, and sit, stand, and walk for 6 hours during an 8-hour

AO72A
(Rev. 8/82)

workday.  She also concluded that plaintiff could occasionally stoop and crouch but could not perform work requiring excellent hearing.  (Tr. 276-283).

Given plaintiff's lack of consistent treatment for her alleged physical impairments, we cannot say that the ALJ's RFC assessment was improper.  While she did complain of fatigue and pain and was prescribed Hydrocodone to treat her pain, there is no indication in the record that plaintiff's physical abilities were ever limited by her treating doctors.  Further, she reported no side effects from her medication, aside from the Xanax which she took at night because it made her drowsy.  (Tr. 344).  Thus, giving plaintiff the benefit of the doubt regarding her pain and fatigue, we find substantial evidence to support a conclusion that she can perform light work with occasional stooping and crouching.

From a mental standpoint, the ALJ's assessment is consistent with the evaluators findings that plaintiff suffered from moderate mental limitations resulting from major depression/adjustment disorder with depression.  Plaintiff's GAF was noted to be in the 50s each time she was assessed by a psychologist.  A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). While we do note Dr. McGhee's comment in 2004 that plaintiff's mental and physical impairments combined resulted in a greater impairment than when considered singularly, we do not believe that the ALJ's RFC assessment fails to take this combination into consideration.  Therefore, we find that the evidence does not support a finding of greater functional limitations than those found to exist by the ALJ.

13

We also find that substantial evidence supports the ALJ's finding that plaintiff can return to her PRW. The vocational expert testified via written interrogatories. (Tr. 145-149). He indicated that plaintiff's PRW as a machine operator, pizza delivery worker, and sheet metal assembly jobs were classified as light level work. (Tr. 145). When incorporating plaintiff's stooping and crouching limitations and mental limitations as assessed by the ALJ, the vocational expert stated that such an individual could return to plaintiff's PRW as machine operator, pizza delivery worker, and sheet metal assembler. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**V.**     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of February 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

14